IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 07-117-GF-BMM-JTJ-1 |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| JITTAWEE CURLY BEAR CUB, | |
| Defendant. | |

This case comes before the Court on Defendant/Movant Jittawee Curly Bear Cub's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. (Doc. 56.)

Following his guilty plea to second-degree murder, Bear Cub is serving a sentence of 188 months in prison, to be followed by five years of supervised release. Bear Cub claims the United States breached the plea agreement and his counsel failed to object. The United States asserts that Bear Cub's claims lack merit and are time-barred.

On May 14, 2015, the matter was referred to the undersigned for Findings and Recommendations. (Doc. 82.) The parties appeared before the undersigned for an evidentiary hearing on October 20, 2015. (Doc. 89.) The parties filed proposed findings on December 14, 2015. (Docs. 93-94.)

# I. Timeliness

Application of the limitations period is a threshold issue and is independent of the merits. The undersigned will address it first.

The United States asserts the § 2255 motion should be dismissed with prejudice as time-barred because Bear Cub filed it on April 3, 2014, more than five years after the one-year limitations period expired.

## A. Commencement and Expiration of the Limitations Period

28 U.S.C. § 2255(f) governs the timeliness of claims in a § 2255 motion. Under § 2255(f)(1), the one-year time limitation runs "from . . . the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Judgment was entered on January 29, 2008. As Bear Cub did not appeal, his conviction became final on February 12, 2008. *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012). Under § 2255(f)(1), he should have filed his § 2255 motion on or before February 12, 2009.

On July 27, 2009, Bear Cub submitted a letter to the Court, stating he wanted to prepare a § 2255 motion. He sought the court's assistance in obtaining his case file from his trial counsel. Letter (Doc. 26). As the letter did not allege any claim for relief, it cannot be construed as a § 2255 motion, *see Woodford v. Garceau*, 538 U.S. 202, 210 n.1 (2003), and its filing did not stop the limitations period from running.

Bear Cub did not submit a document containing claims for relief until April 3, 2014.  Consequently, unless equitable tolling applies, Bear Cub's § 2255 motion should be dismissed with prejudice as time-barred.

## B.  Equitable Tolling

### 1.  Legal Standards

The limitations period may be tolled on equitable grounds if the defendant shows he pursued his rights diligently but some extraordinary circumstance stood in his way and prevented him from filing on time.  *Holland v. Florida*, 560 U.S. 631, 649 (2010).  In other words, "[w]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling may be appropriate."  *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999).  Bear Cub has the burden of proving that equitable tolling is warranted.  *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

A litigant meets the diligence requirement by exercising "reasonable diligence" under the circumstances.  The litigant is not required to act with "maximum feasible diligence."  *Holland*, 560 U.S. at 653.

An "extraordinary circumstance" need not be novel or unpredictable.  "[T]he proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner" who is diligently pursuing his rights.  *Diaz v. Kelly*, 515 F.3d 149, 154

(2d Cir. 2008) (discussing *Mendoza v. Carey*, 449 F.3d 1065, 1069-70 (9th Cir. 2006) (finding an extraordinary circumstance where Spanish-speaking prisoner had no access to translator or Spanish-language materials)). The extraordinary circumstance must "proximately cause[] the late filing." *Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003).

Bear Cub avers that he filed late because he was unable to obtain his case materials from his attorney and because he did not have sufficient access to legal resources at the numerous facilities where he was placed over a period of about six years. Reply (Doc. 81) at 8-9; Letter to Court (Doc. 26) at 1-2; Mot. for Counsel (Doc. 64-3) at 2 ¶ 5. Courts have long recognized a litigant's lack of access to his own legal files and lack of access to legal resources as circumstances that can pose extraordinary obstacles to timely filing. *See, e.g.*, *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009); *Espinoza-Matthews v. California*, 432 F.3d 1021, 1027-28 (9th Cir. 2005); *Spitsyn v. Moore*, 345 F.3d 796, 800-02 (9th Cir. 2003), *cited with approval in Holland*, 560 U.S. at 651; *Lott v. Mueller*, 304 F.3d 918, 924-25 (9th Cir. 2002); *Whalem/Hunt v. Early*, 233 F.3d 1146, 1147-48 (9th Cir. 2000) (en banc) (per curiam); *see also id*. at 1149 (Tashima, J., concurring) (stating that a "petitioner's knowledge of the legal basis of his claims is not the same as knowledge of the procedural rules that must be complied with in order to get a hearing on the merits."). A litigant who lacks reasonable access to both the facts

and the law cannot be expected to prepare a timely § 2255 motion.

### 2. The United States' Counter-Argument

The United States argues that Bear Cub's claims all relate to his allegation that it breached the plea agreement, and that Bear Cub knew both the (alleged) fact and the legal theory of breach at the time of sentencing. *See* Evid. Hr'g Tr. at 53:21-55:6; U.S. Proposed Findings (Doc. 93 at 12-13 ¶ 4 para. 3). It concludes that he could have filed a § 2255 motion far sooner than he did because he did not actually need his case file to discover a claim he already knew existed.

The date on which Bear Cub discovered the facts underlying his claim, 28 U.S.C. § 2255(f)(4), is not relevant to the timeliness issue. Bear Cub's time to file did not begin to run until his conviction became final, *id.* § 2255(f)(1), because that date is the later of those two options, *id.* § 2255(f).

Further, Bear Cub had one year to file a full-fledged, all-inclusive § 2255 motion setting forth *all* claims available to him. *See, e.g.*, *Castro v. United States*, 540 U.S. 375, 383 (2003) (requiring district courts to extend opportunity to amend to pro se litigants who file documents proposed to be recharacterized as § 2255 motions so the document "contains all the § 2255 claims [the litigant] believes he has").

This is one reason courts extend equitable tolling to litigants who do not have their own case materials: it is "unrealistic to expect a habeas petitioner to

prepare and file a meaningful petition on his own within the limitations period without access to his legal file." *Espinoza-Matthews*, 432 F.3d at 1027-28 (quoting *Spitsyn*, 345 F.3d at 801) (internal quotation marks and brackets omitted). Moreover, the relevant cases do not distinguish between claims that a petitioner could raise without the file and claims that rely on something available only in the case file; they simply ask whether the petitioner's lack of access to his file or some other extraordinary circumstance *caused* his late filing or prevented him from filing on time. *See, e.g.*, *Ford v. Pliler*, 590 F.3d 782 (9th Cir. 2009) (citing *Bryant v. Arizona Atty. Gen.*, 499 F.3d 1056, 1061 (9th Cir. 2007)). Bear Cub himself recognized what § 2255 requires and did not file in piecemeal fashion for that reason, although his comments also suggest he did not fully realize a breach of contract claim could be a § 2255 claim. *See* Evid. Hr'g Tr. at 58:8-59:23.

In sum, the fact that Bear Cub could have filed sooner than he did is not controlling. The Court must decide whether a circumstance beyond Bear Cub's control caused him to file late and whether Bear Cub diligently pursued his right to file.

### 3. Analysis

"[T]he statute-of-limitations clock stops running when extraordinary circumstances first arise, but the clock resumes running once the extraordinary circumstances have ended or when the petitioner ceases to exercise reasonable

diligence, whichever occurs earlier." *Luna v. Kernan*, 784 F.3d 640, 651 (9th Cir. 2015) (citing *Gibbs v. Legrand*, 767 F.3d 879, 891-92 (9th Cir. 2014)); *see also United States v. Ibarra*, 502 U.S. 1, 4 n.2 (1991) (per curiam).

Six years is a long time for equitable tolling to cover. If intermittent access to legal resources and lack of the case file were the only circumstances Bear Cub could show for the entire period of time at issue, his § 2255 motion would likely be dismissed. But two additional circumstances—virtually unnoted by the parties but decisive to the Court—literally made it impossible for Bear Cub to file a § 2255 motion: a judge entered an order unusual under the circumstances and counsel failed to take any action at all, even though he knew the order harmed his client's interests.

Two time periods are relevant: the 22 months that passed between the expiration of Bear Cub's time to appeal on February 12, 2008, and issuance of the Order of December 28, 2009; and the slightly overlapping period of 51 months that passed between Bear Cub's letter of July 27, 2009, and the filing of Bear Cub's petition for writ of error coram nobis on April 3, 2014.

### a. Time to December 28, 2009

Bear Cub was held in segregation[1] from about January 28, 2008, to mid-

---

[1] Bear Cub testified, without contradiction, that he was sometimes placed in segregation for protective or investigative reasons and sometimes for disciplinary reasons. *See, e.g.*, Evid. Hr'g Tr. at 27:1-28:5, 55:7-56:3. Even in segregation, inmates are entitled to the "tools . . . the

February 2008, Evid. Hr'g Tr. at 19:5-21:8; from April 20, 2008, through the first week of August 2008, *id.* at 22:17-25:6; and from January 1, 2009, to September 2009, *id.* at 27:25-28:5. He was in transit from about August 7, 2008, to September 15, 2008. *Id.* at 25:6-26:4. In segregation and in transit, he either had no access to legal resources or his access was limited to requesting specific items; none of his requests were answered. *Id.* at 23:14-25, 25:5-24, 29:18-30:7. This testimony was undisputed.

Bear Cub was in a "compound" at Federal Correctional Institute (FCI) Florence from the first week of March 2008 to April 20, 2008, where he presumably had access to legal resources. He also had access to "a good law library" at FCI Manchester for about four months in the fall of 2008, "so [he] was researching," although "it was a book system, you know, so I had to go book-by-book to try and see what I could pull out." *Id.* at 25:25-26:20. In sum, Bear Cub had access to legal resources for over five and a half months. His deadline for filing was February 12, 2009, but he was in segregation for the last six weeks of his time to file.

Through most of this time, Bear Cub thought an appeal was pending, and he repeatedly attempted to contact counsel by phone or letter to obtain a status update and his case file. Bear Cub, who was a credible witness on this point, testified that

inmates need in order to attack their sentences, directly or collaterally." *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (discussing *Bounds v. Smith*, 430 U.S. 817 (1977)).

he was "trying to get ahold of" counsel "[d]uring the whole process," "almost a continuous effort," from "dang near every facility I've been to." *See* Evid. Hr'g Tr. at 38:12-19; *see also id*. at 41:10-20, 46:13-47:25, 75:2-8. At some point, when he had not heard anything at all from counsel despite his numerous attempts to contact him, Bear Cub concluded no appeal was pending. While he may have had his plea agreement at the time—it is not clear whether it was available to him throughout his time in prison or he merely obtained it at one point from prison staff, *see id.* at 56:13-20, 72:6-10—he did not have any of the other documents filed in the Court's record, the discovery produced by the United States, or any correspondence he might have received from counsel.

Periods of time when Bear Cub lacked access to legal resources and did not have his case file warrant equitable tolling because a person cannot work on a § 2255 motion under those circumstances. Of course, a few days' deprivation of access to these materials is not significant, but when lack of access stretches out over a continuous period, tolling is warranted.

February 12, 2008, was both the start of the limitations period and the day Bear Cub was released from segregation. He did not testify that he lacked access to legal resources at Shelby. He also did not testify that he lacked access to legal resources for the 30-day period when he was in a "compound" at FCI Florence. Consequently, there is no basis for equitable tolling during the first 67 days of the

limitations period.

From April 20, 2008, through the first week of August 2008 (presumably ending August 7, 2008), Bear Cub was in segregation with no useful access to legal resources and no case-related materials. Then he was in transit until mid-September 2008. April 20, 2008, to September 15, 2008, is a period of 216 days. Bear Cub is entitled to equitable tolling during that time. Therefore, September 16, 2008, was Day 68 of the limitations period.

Bear Cub had access to a "good law library" from September 16, 2008, until he was again placed in segregation on January 1, 2009, which was Day 176 of the limitations period. In segregation, he continued to attempt to contact counsel, finally submitting a letter seeking the Court's assistance on July 27, 2009 (Doc. 26).

Bear Cub testified that he obtained access to an electronic law library in segregation at FCI Manchester in "late September 2009." As he explained, at that point, he was no longer relying on the "cop-out for a book" system, which yielded no response to his requests. *See* Evid. Hr'g Tr. at 29:20-23. Assuming, solely for the sake of argument, that "late September 2009" meant September 20, 2009, September 21, 2009, was Day 176 of the limitations period. Time ran against him for about ten days in September when he had access to legal resources, making October 1, 2009, Day 187.

In October, Bear Cub left FCI Manchester, spent a month at a transfer center in Atlanta, and then arrived at FCI Coleman in "November or December." Evid. Hr'g Tr. at 330:8-31:5. Assuming he arrived on November 1, 2009, time ran continuously from that date until December 28, 2009, whichwas Day 245 of the limitations period.

With these specified "stop-clock" periods of equitable tolling, Bear Cub still had about 120 days to file a § 2255 motion as of December 28, 2009. At best, he had access, of an undefined duration, to one document from his case, the plea agreement, during this entire period of time. He was unable to contact counsel during the entire period, and he had only intermittent useful access to legal resources. He was reasonably diligent in his attempts to contact counsel, and when he had access to legal materials, he diligently (with varying degrees of success and tedium) attempted to use them. Under the circumstances, he could not file a reasonably complete § 2255 motion before December 28, 2009.

### b. Time from December 28, 2009, to April 3, 2014

Unusual circumstances arose after Bear Cub submitted a letter to the Court on July 27, 2009. Bear Cub continually tried to contact counsel. Evid. Hr'g Tr. at 38:12-19. Bear Cub's many stints in disciplinary segregation, though no doubt partly his fault, inhibited his ability to work on his case, and but he continually tried to use the resources available to him when and where he could, in segregation

or out, *id.* at 32:8-11, 33:19-34:15, 38:4-11, 39:17-23, 41:6-9, 42:11-15, 43:19-44:13, 44:18-45:21.  He acted with the required diligence.

The extraordinary circumstance preventing him from filing, however, changed.  Throughout the period from December 28, 2009, to April 3, 2014, the limitations on Bear Cub's access to legal resources and his own file were not sufficiently serious as to prevent him from filing.  But as of December 28, 2009, counsel represented Bear Cub, and counsel failed to protect his client's interests in light of a court order that prohibited Bear Cub from filing *pro se*.  The following facts are pertinent.

On January 30, 2008, six days after sentencing, counsel sent Bear Cub a letter, with a copy of the written judgment, stating:

> It is my understanding that you do not want to appeal this sentence.  I was disappointed the judge refused to allow you the 3 points for acceptance, but also very relieved that he did not depart upward on the guidelines.

> I am now closing this case in my files.  Good luck to you in the future and I hope things work out well for you.

Def. Ex. 501 at 1.

Counsel testified that this letter was returned to him unopened and marked "return to sender."  Counsel said he "did not see that letter until, probably, this spring, when I was aware that the appeal was an issue in his case."  Counsel found the returned letter when he "opened his file, and there [was] that letter, and it had

not been opened, even." Evid. Hr'g Tr. at 74:3-14. Someone in counsel's office knew the letter was not delivered to Bear Cub because someone put it in the file. Therefore, counsel should have known Bear Cub did not receive counsel's disengagement letter.

Bear Cub testified, and counsel agreed, that Bear Cub repeatedly tried to contact counsel after sentencing, beginning with phone calls in mid-February 2008, *see* Evid. Hr'g Tr. at 19:5-20:10, and continuing "[d]uring the whole process" of his work on a § 2255 motion, with "almost a continuous effort," *id.* at 38:12-19. Counsel admitted that Bear Cub called many times. Counsel never spoke with or wrote to Bear Cub. Counsel asked his secretary what Bear Cub wanted, but when she responded, "Well, not much of anything," he did not inquire further. Counsel finally instructed his secretary to "[q]uit taking [Bear Cub's] phone calls" because counsel was "not going to pay for these conversations any longer." *Id.* at 70:23-71:5.

Counsel admitted that Bear Cub may have written letters that were not answered, or even kept, because "[w]hen I close a case, I close a case, and I don't pay a lot of attention to it after that." *Id.* at 75:2-8.

Counsel also stated that he believed Bear Cub "already had his [police] reports," meaning discovery produced to the prosecution. Counsel continued, however, "[a]ny court documents, my client would have a copy of, court

13

documents, unless it's sensitive information of some kind" or "could incriminate [him]." Counsel said he would not give the client a copy of information he deemed incriminating or sensitive and would only have reviewed that information with the client in person. The client also might not receive a complete copy if the discovery included "several hundred pages of paperwork." *Id.* at 71:9-22. Counsel said he does not "keep police reports"—again, meaning discovery generally—"past the appeal dates." *Id.* at 77:4-5.

In essence, counsel knew he might have had, at least at some point, information that could have been of interest to Bear Cub, and he knew that Bear Cub probably did not have all of it, yet he discarded it when the time to appeal expired. Due to Bear Cub's persistent attempts to obtain his file from counsel, counsel was aware of Bear Cub's desire to contact him. But counsel did not know, and did not find out, what Bear Cub wanted. Counsel failed to respond in any way.

About five and a half months after the limitations period expired, Bear Cub sent a letter to the Court regarding access to his attorney and his case file. The letter stated:

> To Whom It May Concern:
>
> I have tryed on numerous occasions to try and get a hold of one James B. Obie [illegible] who was my attorney in order that I may get a copy of my full discovery in my case (case number CR-07-117-GF-SEH-01), a copy of the same case # court transcripts and my co-defendents court transcrips Jordan Martell case # CR-07-24-GF-SEH-01 and T.M. CR 07-16-GF-SEH (JUV). In the effort of trying to file a 2255

and request for a new attorney to represent me so that I may make the 2255 I am requesting all of these and a new attorney to represent me due to the ineffeciancy of said previous counsel. And the fact that I am indigent is the reason why I ask for a new court appointed attorney.

I have trying effect an appeal for the past 18 months but all of my phone calls, letters, and entreaties have gone unanswered.

May I get a response along with all the documents that I have requested? And along with requested documents I need a copy of sentencing judgement and commitment and pre-sentence report in this case.

I have only barely gotten the address to the clerk of court, which is the reason why I am writing now and instead of earlier. May I get a response please? I thank you for your time.

Truly yours,
Jittawee Bear Cub

Letter (Doc. 26) at 1-2 (sic). The Clerk of Court received and filed the letter as a

motion for counsel on July 27, 2009.

At the evidentiary hearing, counsel testified that he received this letter via

the Court's electronic filing system. Asked whether he did anything in response,

counsel said:

> I probably looked in my file to see if I had any information in there, and I had nothing to send. So, again, whether I gave him my entire file, I don't know. He wasn't in my files [sic]. I don't know where it is. I don't keep police reports past the appeal dates. . . .
> [I]f he had filed a 2255 action involving some claim of ineffective assistance, I would consider him an opposing party at that point, and I would not have contact with him. And I very well may have gotten letters from him asking for documents, but I had nothing to give.

Evid. Hr'g Tr. at 76:24-77:15.

Assuming counsel looked in his file, he saw the returned and unopened disengagement letter he had sent to Bear Cub in January 2008. Thus, as of July 27, 2009, counsel knew what Bear Cub wanted, that Bear Cub had persistently tried to contact him, and that Bear Cub did not know that counsel had terminated their relationship in January 2008. If counsel did not look in his file, he knew what Bear Cub wanted but took no action in response. Counsel also should have known there was no § 2255 action on the docket. Either way, he did not respond in any way to Bear Cub's letter.

On December 28, 2009, the presiding judge issued an order stating, in pertinent part:

> On January 24, 2009,[2] Defendant, who at all times was represented by counsel, was sentenced to 188 months in custody and 5 years supervised release following conviction for second degree murder. No appeal was taken.
> On July 27, 2009, Defendant personally filed with the Court a "To whom it may concern" letter which requested a new attorney be appointed to represent him. The Court neither accepts nor considers purported *pro se* requests of persons represented by counsel. James B. Obie, Esq. remains as Defendant's counsel of record. All matters directed to the Court are to be filed by counsel.
> ORDERED:
> 1. Any request for replacement counsel contained in the "To whom it may concern letter" is DENIED.
> 2. No further documents are to be filed or submitted by Defendant acting *pro se*. Unless specifically approved for filing by the Court, any such documents received by the Clerk of Court shall be returned to sender.

---

[2] Sentencing was held on January 24, 2008.

Order (Doc. 27 at 1-2).

Bear Cub testified that he did not receive the order. Evid. Hr'g Tr. (Doc. 92) at 32:21-33:9. Generally, when the clerk mails a service copy of an order to a *pro se* litigant, the docket entry accompanying the order says so. The docket entry here does not indicate the clerk served Bear Cub. Nor does the notice of electronic filing indicate that Bear Cub would be served by non-electronic means. Therefore, the evidence supports Bear Cub's claim that he did not receive the order. From Bear Cub's perspective, therefore, not only were his repeated attempts to contact counsel fruitless, but the Court did not respond to him either.

But, via the Court's electronic filing system, *counsel* received the order. Evid. Hr'g Tr. at 78:8-79:9. Counsel recalled seeing it when it was issued. *Id.* at 75:15-24. He also testified that, despite what the order said, he considered his representation terminated when the time to appeal expired.[3] He explained that Bear Cub:

> was not asking me to file anything. . . . I mean, if he was still a client, I would be considering filing something for him. But at this point, I did not consider myself as his attorney. Especially if he was doing some 2255 action.

*Id.* at 78:17-23.

---

[3] This belief was reasonable. Appointments under the Criminal Justice Act terminate with the conclusion of direct appeal. 18 U.S.C. § 3006A(c); Fed. R. Crim. P. 44(a); *Wilkins v. United States*, 441 U.S. 468, 469 (1979) (per curiam). But, once the Court issued the Order of December 28, 2009, it became unreasonable for counsel to believe he did not represent Bear Cub.

The order expressly told counsel not only that he represented Bear Cub, but also that Bear Cub was not permitted to file anything himself. Although Bear Cub's July letter said he was preparing a § 2255 motion, the docket showed there was no "2255 action" on file.

At this point, counsel knew three things: Bear Cub was trying to contact him to obtain his file so that he could file a § 2255 motion, the Court believed counsel continued to represent Bear Cub, and anything else Bear Cub might submit to the Court *pro se* would likely not be filed. Yet counsel did nothing. He did not notify the Court that he believed his representation of Bear Cub had been terminated and that he believed he had a sound ethical reason—that is, an impending § 2255 motion—not to represent Bear Cub. He did not contact anyone else who might have assisted or advised Bear Cub. And he did not contact Bear Cub.

Under the peculiar circumstances of this case, even if Bear Cub had submitted a § 2255 motion sometime before April 2014, the Order of December 28, 2009, would have prevented its filing.[4] the December 28 Order made counsel

---

[4] The Clerk of Court's filing of the *pro se* petition in April 2014 violated the Order of December 28, 2009. It was entirely fortuitous that the motion was filed and not stricken. Its fortuitous filing does not suggest Bear Cub could have filed anything *pro se* at any earlier time.

The United States initiated garnishment proceedings on January 13, 2012. The clerk issued the United States' notice of post-judgment garnishment, which told Bear Cub what he must do to claim an exemption or seek the return of garnished property. The notice was consistent with court-approved *pro se* filing; garnishments are frequently carried out as Bear Cub's was. The United States pointed out to the judge who presided over the criminal case that it had contacted counsel, and counsel said he no longer represented Bear Cub. *See* Mot. for Order (Doc. 39) at 4. United States District Court Judge Sam E. Haddon set and held a hearing

responsible for acting on Bear Cub's behalf. Therefore, the issue is whether counsel prevented Bear Cub from filing on time. He did. Knowing Bear Cub wanted to pursue a § 2255 motion and knowing a *pro se* motion would likely be rejected because the Court deemed Bear Cub to be represented by counsel, counsel failed to act for his client and ignored Bear Cub's continuing attempts to contact him. Evid. Hr'g Tr. at 74:22-75:8, 77:13-15. Counsel could have delivered documents from the electronic record to Bear Cub. He could have told Bear Cub he no longer had the discovery so there was no hope of showing it to people at the prison who could help him file;[5] he could have obtained a replacement set of discovery documents from the United States, as Bear Cub attempted to do, *see* Evid. Hr'g Tr. at 42:18-43:18. Counsel could have filed a motion with the Court to allow Bear Cub to file *pro se* or to appoint new counsel. Counsel could have asked another attorney to contact Bear Cub. Had counsel done *anything* in response to the order, Bear Cub would have received the benefit of the 120 days remaining on

---

without addressing the issue of counsel. Minutes (Doc. 44). These events did not invalidate or rescind the Order of December 28, 2009. Nor do they show either that the clerk would have filed a *pro se* § 2255 motion if Bear Cub had submitted one.

[5] Failure to deliver the client's file to him on demand is grounds for equitable tolling of the limitations period. *See Spitsyn*, 345 F.3d at 801 (attorney fired by prisoner retained case file, despite persistent demands for it, throughout the limitations period and two months beyond), *cited with approval in Holland*, 560 U.S. at 651; *Doe v. Busby*, 661 F.3d 1001, 1009-10, 1012 (9th Cir. 2011) (attorney failed to file on time, although prisoner repeatedly wrote to him for three years urging him to do so, and when attorney finally "fired" the client, he retained the file for another six months); *Porter v. Ollison*, 620 F.3d 952, 956-57, 960 (9th Cir. 2010) (attorney retained file for a year and a half after prisoner began demanding its return). When counsel does not even keep the file, he cannot deliver it to the client. But he could at least tell the client that.

his clock as of December 28, 2009.

Counsel's divided loyalty and the order together constitute an extraordinary circumstance preventing Bear Cub from filing a timely § 2255 motion. Bear Cub never ceased being reasonably diligent in his attempts to contact counsel and in attempting to work on a *pro se* request for relief, despite his intermittent periods in segregation or in transit. He meets both prongs of the *Holland* test and is entitled to equitable tolling from December 2009 until the filing of his coram nobis petition in April 2014.

### c. Conclusion as to Timeliness

Throughout the entire time period at issue, Bear Cub diligently attempted to contact counsel, initially trying to obtain a status update and later trying to obtain his case file. His efforts frequently may have been misdirected or fruitless, but the evidence shows he was diligent.

Due to a combination of lack of access to his case file and lack of access to legal resources, Bear Cub is entitled to equitable tolling for 440 days of the first relevant time period, from the day the limitations period began to run until December 28, 2009. In that period of time, 245 days ran against the 365-day limitations period, leaving him 120 days to file.

Lack of access to the file and legal resources probably prevented Bear Cub from filing for at least some period of time after December 28, 2009, but probably

not all the time that would have to be tolled to make the April 2014 petition timely.

Even so, a different extraordinary circumstance—the order prohibiting Bear Cub

from filing *pro se* and counsel's complete abandonment of his client despite the

plain language of the order—literally prevented Bear Cub from filing before he

filed his petition on April 3, 2014. Bear Cub was truly "prevented from asserting

his . . . rights," *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 618-19 (3d

Cir. 1998) (following *Calderon v. United States Dist. Court* ("*Beeler*"), 128 F.3d

1283, 1289 (9th Cir. 1997)), for reasons amounting to self-interest on counsel's

part, *cf. Manning v. Foster*, 224 F.3d 1129, 1134-35 (9th Cir. 2000).

With equitable tolling, Bear Cub's *pro se* petition was timely when it was

fortuitously filed on April 3, 2014.[6]

## II. Merits

Bear Cub asserts that the United States breached the plea agreement and that

counsel was ineffective because he failed to identify and object to the breach. Mot.

§ 2255 (Doc. 56) at 2-4; Supp. (Doc. 64) at 2-3; *see also Santobello v. New York*,

404 U.S. 257, 262 (1971); *United States v. Camarillo-Tello*, 236 F.3d 1024, 1027-

28 (9th Cir. 2001). He also claims that counsel was ineffective because he failed to

comply with a specific instruction to appeal. Supp. at 2-3; *see also Roe v. Flores-*

---

[6] The United States' motion to dismiss the § 2255 motion as untimely is aimed at Bear Cub's initial filing. *See* Answer (Doc. 76) at 4; U.S. Proposed Findings (Doc. 93) at 9-13. The United States has waived any argument that one or more claims ought to be analyzed separately.

*Ortega*, 528 U.S. 470, 480 (2000); *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005).

Most of Bear Cub's own testimony at the evidentiary hearing negated his claim that he instructed counsel to appeal. Bear Cub did not give counsel an unambiguous instruction to appeal; instead, Bear Cub and counsel talked past each other. *See* Evid. Hr'g Tr. at 14:22-15:14, 17:19-25, 53:6-13, 70:13-16. Consequently, the following discussion addresses only Bear Cub's claims relating to the breach.

### A.  Procedural Background

On October 16, 2007, pursuant to a plea agreement, Bear Cub pleaded guilty to second-degree murder in connection with the disappearance of his cousin, Richard Red Dog. Minutes (Doc. 10); Information (Doc. 1).[7]  Both parties reserved "all right, without condition, to make any appropriate sentencing recommendation." Plea Agreement (Doc. 6) at 7 ¶ 11. The United States specifically advised Bear Cub that "it may seek an upward sentencing departure from the Defendant's advisory sentencing guideline range" and might seek a sentence above the advisory guideline range under 18 U.S.C. § 3553(a) or *United States v. Booker*, 543 U.S. 220 (2005). Plea Agreement at 7 ¶ 11. The plea

---

[7]  Bear Cub was a juvenile at the time of the murder and was initially charged as such. In the plea agreement, he agreed to be tried and sentenced as an adult and to dismiss a pending appeal on that issue, *see* Plea Agreement at 10 ¶¶ 17-18, and he waived indictment, *see id.* at 5 ¶ 9(a); Waiver (Doc. 3) at 1.

agreement was not binding on the sentencing court. *Id.* at 2 ¶ 5; Fed. R. Crim. P. 11(c)(1)(B).

Along with these important reservations, the United States promised to "recommend that the Defendant be given a two point credit for acceptance of responsibility" under U.S.S.G. § 3E1.1,[8] "unless the Defendant is found to have obstructed justice prior to sentencing." Plea Agreement at 7 ¶ 11 (citing U.S.S.G. § 3C1.1). Under U.S.S.G. § 3C1.1, "obstruction of justice" means, in essence, something that may interfere with investigative or judicial processes related to the crime of conviction. *See generally id.*, Application Notes 1-5. The United States also averred that it would seek the third point for acceptance of responsibility if, among other things, Bear Cub "otherwise qualifies for a two level adjustment for acceptance of responsibility." *Id.* at 8 ¶ 12. Bear Cub, counsel, and the United States signed the agreement on October 11, 2007.

On October 16, 2007, the Court conducted a change of plea hearing under

---

[8] U.S.S.G. § 3E1.1(a) provides for a two-level reduction in the offense level if the defendant "clearly demonstrates acceptance of responsibility for his offense." The required showing is generally made by pleading guilty, although, in unusual circumstances, the reduction may be granted if the defendant goes to trial. No one is entitled to the reduction, and the sentencing judge has broad discretion to grant or deny it. Among other things, factors to be considered include whether the defendant voluntarily terminated or withdrew from criminal conduct or associations and whether the defendant obstructed justice. U.S.S.G. § 3E1.1 Application Notes 1-5.

Subsection (b) of the guideline allows for an additional one-level reduction if the defendant obtains the reduction under (a), the offense level before the reduction under (a) was 16 or higher, and the defendant notified the government of his intent to plead guilty before the government prepared for trial. The additional reduction under (b) may be granted only on motion of the United States. U.S.S.G. § 3E1.1 Application Note 6.

Fed. R. Crim. P. 11.  Describing the offense, Bear Cub admitted he became angry

with Red Dog "over my ex-girlfriend" and "things got out of hand."  He admitted

he beat Red Dog with his hands and, when someone handed him a knife, he

stabbed Red Dog four or five times.  He stated that the two other persons with him

"used other instruments" but specified only one defendant's kicking Red Dog with

his feet.  He said the murder took place near a bridge, and they threw Red Dog's

body into the Missouri River.  *See* Change of Plea Tr. (Doc. 69) at 32:10-33:20;

Offer of Proof (Doc. 8) at 3-4 ¶¶ 7-8.

The United States Probation Office prepared a presentence report.  The

probation officer received a disciplinary report from the jail indicating that on

December 1, 2007—about six weeks after the change of plea hearing—Bear Cub

and two other inmates assaulted one Nard, a fellow inmate at the Cascade County

Detention Center.  Nard suffered a compound fracture of his nose.  At an

administrative hearing, Bear Cub was found guilty and placed on a 30-day

lockdown with no privileges.  Presentence Report ¶ 19.  The probation officer also

received a disciplinary report that in mid-November 2007, Bear Cub told another

inmate that he would get beat up if he did not share some of his commissary

benefits with Bear Cub, but this disciplinary report was dismissed.  Staff members

at the detention center told the probation officer that the inmate was later assaulted

by unidentified inmates.  *Id.* ¶ 20.

Based on one or both of the jail disciplinary reports, the probation officer recommended that Bear Cub not receive credit for acceptance of responsibility and omitted the two-point reduction under U.S.S.G. § 3E1.1(a) (eff. Nov. 1, 2003) from the draft presentence report. Because the two-point reduction was omitted, the third point was also omitted. U.S.S.C. § 3E1.1(b). The probation officer wrote:

> The defendant is not eligible for the Adjustment for Acceptance of Responsibility since he continues with assaultive behaviors. Even though the defendant does not warrant the adjustment for acceptance of responsibility, he submitted the following written statement:
>
> > To whom it may concern:
> >
> > I would like to apologize to my family first and foremost for all of the pain and misery I have caused them I am deeply sorry for my families [sic] mental anguish. I accept full responsibility for my actions that night that resulted in the death of my cousin. If I could give anything to change what I did I would I am sorry for everything. I am willing to change and given the chance I will chance I will change [sic]. I again accept responsibility.

Presentence Report ¶ 21.

Bear Cub objected and urged the probation officer to award credit for acceptance of responsibility. Presentence Report Addendum at 1. The probation officer declined to alter the draft report and submitted the issue to the sentencing judge for resolution. *See* Fed. R. Crim. P. 32(f), (g), (i)(3)(B).

On December 26, 2007, the United States filed notice of its intent to seek a

sentence above the advisory sentencing guideline range.  On January 7, 2008, it filed its sentencing memorandum.  The United States contended that an upward departure was appropriate for three reasons.  First, the Sentencing Commission increased the second-degree murder guideline after Bear Cub committed the offense.  Under the amended guideline, and with no adjustment for acceptance of responsibility, the advisory guideline range would have been 292 to 365 months; with acceptance of responsibility, it would have been 188 to 235 months.  Second, the United States asserted the three people who killed Red Dog used multiple weapons—boots, a baseball bat, a chain, and a knife—in the course of the murder. *See* U.S.S.G. § 5K2.6.  Third, the United States claimed the defendants engaged in unusually heinous, cruel, degrading, or brutal conduct by fleeing the scene when a car approached, only to return to the scene after the car passed to recommence the beating, ultimately killing Red Dog and dumping his body in the river.  *Id*. § 5K2.8; *see* U.S. Sentencing Mem. (Doc. 16) at 5-6; Notice (Doc. 15) at 2.

In addition, the United States urged the sentencing judge to deny credit for acceptance of responsibility, stating:

> The Defendant pled guilty and expressed remorse for the murder of Red Dog.  Following his guilty plea, however, the Defendant proceeded to beat up another inmate.  His actions speaker [sic] louder and more truthfully than his words.  He continues to be a violent criminal, despite his protests to the contrary.  As he did in December 2003, the Defendant recently joined a pack of other predators in violently attacking a single victim.  Such is not the conduct of a man who accepts responsibility for his offense of conviction.  The

> Defendant is not entitled to a reduction of his advisory sentencing
> guideline range under U.S.S.G. § 3E1.1.

U.S. Sentencing Mem. (Doc. 16) at 8. The United States also noted that it would

recommend a sentence between 360 months and life based on the use of weapons

and the depraved nature of the murder even if the Court found Bear Cub sincerely

accepted responsibility and deserved a reduction in the offense level. *Id.* at 7 n.2.

On January 21, 2008, Bear Cub filed his sentencing memorandum. Pointing

to the absence of any other jail or prison disciplinary charges in the three years he

had already spent in federal custody, counsel represented that the other two

inmates had pleaded guilty to misdemeanor assault, but Bear Cub pleaded not

guilty and intended to stand trial. Counsel submitted "kites" showing that Bear

Cub attempted to appeal the disciplinary violation but no appeal was available

because he did not lose any "good time." Sentencing Mem. Exs. A, B (Docs. 19-1,

19-2). Counsel also objected to the United States' proposed grounds for upward

departure. Bear Cub Sentencing Mem. (Doc. 19) at 4-7.

With credit for acceptance of responsibility, Bear Cub's advisory guideline

range was 108 to 135 months. Without it, it was 151 to 188 months. Bear Cub

requested a sentence at the high end of the range with credit for acceptance of

responsibility, i.e., 135 months. The United States requested a sentence in the

highest available guideline range, 360 months to life.

Neither the United States nor Bear Cub mentioned the United States'

promise to "recommend that the Defendant be given a two point credit for acceptance of responsibility, unless the Defendant is found to have obstructed justice prior to sentencing." Plea Agreement at 7 ¶ 11. Nor did either party suggest there was any connection between Bear Cub's participation in the jail assault and obstruction of justice.[9]

At the sentencing hearing, the United States called three detention officers to testify in support of the probation officer's recommendation to deny credit for acceptance of responsibility. Officer Palagi testified that he was told an inmate in Cell 2 "may need some medical help." When he arrived at Cell 2, he saw Nard holding a towel over his face. Bear Cub was mopping up blood and said Nard had had a seizure. Nard's nose was broken. Officer Miller said he saw Bear Cub sitting on a table, "kind of smirking, laughing," and heard him say "I had nothing to do with it." Officers Miller and Buhler testified that Nard reviewed "a photo book of all the offenders that were in the pod," a total of about 20 people, and identified Bear Cub as one of four individuals involved. Officer Miller also testified that Bear Cub had reportedly been involved in numerous incidents of assault of other inmates or insolence to staff, about one a month in the 17 months he was there, describing his movement in and out of disciplinary housing as "a

---

[9] Some of the United States' evidence against Bear Cub on the murder charge was brought to it by a person who was celled with Bear Cub at the Cascade County Detention Center. That inmate, however, was not the inmate Bear Cub was accused of assaulting or the inmate he was accused of intimidating. *See* Presentence Report ¶¶ 9, 19-20.

rotating door." Sentencing Tr. (Doc. 70) at 5:24-23:16, 38:7-15.  The United

States did not call witnesses to support its request for an upward departure.

Bear Cub's base offense level was 33.  The sentencing judge denied credit

for acceptance of responsibility.  There were no other adjustments.  Bear Cub's

criminal history category was II.  Presentence Report ¶¶ 22-31, 35.  The advisory

guideline range was 151 to 188 months.  U.S.S.G. Ch. 5 Part A (Sentencing Table).

The Court sentenced Bear Cub to 188 months in prison and five years of

supervised release.  The Court entered written judgment on January 29, 2008.

Sentencing Tr. at 45:2-20; Judgment (Doc. 23) at 2-3.

### B.  Breach of the Plea Agreement

#### 1.  Was There a Breach?

Bear Cub asserts that the United States breached the plea agreement, Pet.

(Doc. 56) at 2-4, and that counsel was ineffective because he failed to say so, Supp.

(Doc. 64) at 2-3.  "Plea agreements are contracts, and the government is held to the

literal terms of the agreement."  *United States v. Johnson*, 187 F.3d 1129, 1134

(9th Cir. 1999).  The United States promised to "recommend that the Defendant be

given a two point credit for acceptance of responsibility, unless the Defendant is

found to have obstructed justice prior to sentencing."  Plea Agreement at 7 ¶ 11

(citing U.S.S.G. § 3C1.1).  The Court did not find that Bear Cub  obstructed

justice.  The United States did not recommend a two-level downward adjustment

for acceptance of responsibility. Therefore, the United States breached the plea agreement.

The United States suggests its performance was excused by Bear Cub's commission of another crime after he pleaded guilty. It says:

> Due to Bear Cub's post-plea criminal conduct, the Probation Office determined that no reduction should be given. The United States then filed a sentencing memorandum in support of the Addendum and the proposed denial of the two-level reduction.
> Bear Cub, on the other hand, argued that he should still receive the reduction contending there was not sufficient evidence to conclude he was involved in the assault. Therefore, a factual dispute was created which had to be resolved at the time of sentencing. In order to perform its proper role and provide the court with reliable evidence that would allow it to make a finding[] regarding the alleged assault, the government called three staff members from the detention center as witnesses at the sentencing hearing. Each of the witnesses provided information to the court about the assault and Bear Cub's involvement in it. This was entirely appropriate under the circumstances because "the government could not bargain away the district court's duty to consider all relevant facts in applying the Sentencing Guidelines."

U.S. Proposed Findings at 17-18 (quoting *United States v. Flores-Payon*, 942 F.2d 556, 562 (9th Cir. 1991)).

The first statement is inaccurate. The probation officer recommended against the reduction based on *disciplinary reports* (one of them dismissed) implicating Bear Cub in two assaults at the jail. In other words, the United States suggests its performance was excused because the probation officer believed a disciplinary report was true. If the United States wanted to condition its

30

performance on the probation officer's recommendation as to acceptance of responsibility, it could have said so.  It did not say so.  It said only that it would not recommend the two-level reduction if Bear Cub obstructed justice.

Because it did not condition its performance on the probation officer's recommendation, the United States had two choices at sentencing: it could call witnesses to testify that Bear Cub was *not* involved in the jail assault, or it could adopt no position on the evidence and simply make the recommendation it promised to make, telling the sentencing court that it was complying with the plea agreement.  Neither of these options would have "bargain[ed] away the district court's duty to consider" whether Bear Cub was sincere in his acceptance of responsibility for murdering Red Dog.  Despite the probation officer's recommendation, a reasonable jurist could view Bear Cub's demeanor and statements at the plea colloquy and in his letter, Change of Plea Tr. at 32:6-33:24, 36:13-17; Presentence Report ¶ 21, as sufficient to warrant the reduction even in light of the probation officer's report, *see id.* ¶¶ 21, 47.  To prevent the sentencing court from reaching that conclusion, the United States called witnesses at sentencing, contrary to its promise to recommend the reduction.  Calling witnesses to bolster the probation officer's recommendation to deny the reduction was a breach of the plea agreement.

*Puckett v. United States*, 556 U.S. 129 (2009), *cited in* U.S. Proposed

Findings at 20-22, presented a different situation. There, after pleading guilty, Puckett not only "assisted another man in a scheme to defraud the Postal Service" but also "*confessed that assistance* (under questioning) to a probation officer." *Id*. at 132 (emphasis added). Further, Puckett's plea agreement stated that "the government agrees that Puckett has demonstrated acceptance of responsibility and thereby *qualifies* for a three-level reduction in his offense level." *Id*. at 131 (emphasis added). Combining the language of the agreement with Puckett's confession to another crime, it was fair to say both that Puckett "obviously did not cease his life of crime," and that "reduction for *acceptance of responsibility* would have been so ludicrous as itself to compromise the public reputation of judicial proceedings." *Id*. at 143 (emphasis in original).

In one respect, Bear Cub's plea agreement is similar to Puckett's. The United States promised to seek the third point for acceptance of responsibility if Bear Cub "otherwise qualifies for the two-level adjustment." Plea Agreement at 8 ¶ 12. Although this language is similar to that in *Puckett*, in this case it supports Bear Cub's position. Here, the agreement to recommend the two-level reduction was conditioned only on the obstruction of justice proviso. It is natural to read the terms of the agreement and U.S.S.G. § 3E1.1(b) together to mean that the United States agreed to recommend the third point if Bear Cub did not obstruct justice and if the sentencing court made the two-level reduction. *See* Evid. Hr'g Tr. at 83:11-

20.  Interpreting the provisions to mean that the United States could introduce evidence and say whatever it wanted to persuade the sentencing judge that Bear Cub did not qualify for *any* reduction for acceptance of responsibility, so long as it still mouthed a recommendation for the two-level reduction, runs afoul of controlling law.

> The government is under no obligation to make an agreed-upon recommendation enthusiastically.  However, it may not superficially abide by its promise to recommend a particular sentence while also making statements that serve no practical purpose but to advocate for a harsher one.

*United States v. Heredia*, 768 F.3d 1220, 1231 (9th Cir. 2014) (internal quotation marks omitted).  Thus, even under the provision relating to the third point for acceptance of responsibility, the United States was not free to call witnesses to testify against what the United States had promised to recommend.

The United States not only failed to recommend the two-level reduction but argued against it and called witnesses to oppose it.  It therefore breached the plea agreement.


## 2.  Is Relief Precluded by Bear Cub's Procedural Default?

### a.  Applicable Standards

The United States asserts that the principal claim of breach is procedurally defaulted because Bear Cub failed to raise it on appeal.  The claim is doubly

defaulted because it was not raised either at sentencing or on appeal. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Abatino v. United States*, 750 F.2d 1442, 1445 (9th Cir. 1985).

Bear Cub's procedural default can be excused if he shows cause for the double default—meaning that "some objective factor external to the defense" prevented him from raising his claim on appeal—and prejudice from the alleged breach. *See, e.g.*, *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)) (internal quotation marks omitted).

Ineffective assistance of counsel is cause sufficient to excuse a double default like Bear Cub's. *See, e.g.*, *United States v. Ratigan*, 351 F.3d 957, 964-65 (9th Cir. 2003) (citing *Carrier*, 477 U.S. at 488). To determine whether counsel was ineffective, the Court must consider whether counsel's performance fell below an objective standard of reasonableness, *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), and (2) whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694. Courts cannot make "a *post hoc* rationalization of counsel's conduct" without regard to whether counsel actually made a strategic choice to pursue a particular course of action. *Wiggins v. Smith*, 539 U.S. 510, 526-27 (2003); *see also, e.g.*, *Marcrum v. Luebbers*, 509 F.3d 489, 502-03 & n.3 (8th Cir. 2007).

### b. Counsel's Performance

Counsel's testimony at the hearing and the parties' submissions to the Court before and at sentencing suggest that the parties forgot or misunderstood the United States' promise to recommend credit for acceptance of responsibility unless Bear Cub obstructed justice. Both lawyers might have forgotten the promise. They might have both mistakenly assumed that Bear Cub's alleged conduct in jail was an obstruction of justice or in some other way amounted to a breach of the plea agreement on his part. Perhaps one of them forgot the right thing and the other assumed the wrong thing. These are the only realistic explanations for the fact that both attorneys filed and reviewed the sentencing memoranda and participated in the sentencing hearing without once mentioning the United States' promise in the plea agreement.

Almost no testimony at the evidentiary hearing suggested that breach of the plea agreement was within the contemplation of either party. As counsel said, "I don't think the breach of contract issue was even coming up at that point." Evid. Hr'g Tr. at 68:2-3. Counsel testified that he did not "put a lot of stock in the court honoring my recommendations or the government's recommendation," *id.* at 82:6-15, but he did not say he strategically declined to object to a breach. He was concerned with the United States' request for a sentence in the range of 360 months to life, *see, e.g.*, *id*. at 64:4-8, and rightly so, *see* U.S. Sentencing Mem. at

7 n.2.  But he was also parrying the probation officer's denial of credit for acceptance of responsibility by "trying to gloss over the fight in the jail" and "arguing to the judge it's an unproven charge at this point."  Evid. Hr'g Tr. at 66:4-7.  Had the United States not called witnesses, the charge might have been unproven.  But by failing to object on grounds of breach when the United States called witnesses, counsel gave up his best means of "glossing over" the jail assault.

Further, regardless of what counsel expected would happen in the trial court, the breach issue should have been preserved for appeal or at least considered as a basis for appeal on a plain-error standard of review.  *Cf. United States v. Manzo*, 675 F.3d 1204, 1211 & n.3 (9th Cir. 2012) (noting that appellate panel's finding on direct appeal that "no plain error occurred" was "clearly erroneous" because "the government had agreed that a base offense level of 34 would apply . . . and promised to recommend a 3-level downward departure" but, due to a mistake of law, "did neither and so breached the express terms of the plea agreement.").  But counsel gave no indication that he considered whether the government complied with the terms of its promise in the plea agreement or whether he should pursue the issue at or after sentencing.

Only Bear Cub's testimony suggested that a breach theory was within counsel's contemplation.  Bear Cub recalled overhearing something about "breach of contract" as counsel and the United States briefly discussed appeal, but he did

not know whether counsel or the United States said it and he did not know what the phrase meant at the time. Evid. Hr'g Tr. at 15:19-16:7, 53:16-55:6, 56:13-57:2. Bear Cub's memory may be colored by what he now believes to be the most important issue in the case. At any rate, there is no evidence that counsel specifically discussed with Bear Cub the possibility of appealing on a breach of contract theory. Counsel might have thought it would be unwise to appeal, and that thought might ultimately have been a reasonable conclusion. But the decision whether to appeal was Bear Cub's, and counsel could not adequately advise him about it without recognizing and researching the possibilities. *United States v. Beltran-Moreno*, 556 F.3d 913, 918 (9th Cir. 2009). The evidence shows that did not occur.

In sum, counsel did not realize the United States breached the plea agreement, had no reasoned, strategic basis for failing to object to the breach at sentencing, and did not adequately consider or advise Bear Cub about the possibility of an appeal on a breach theory. With respect to the breach, counsel's performance was deficient.

### c. Prejudice

There is a reasonable probability that Bear Cub was prejudiced by the breach and by counsel's failure to raise it. A reasonable probability is less than a preponderance of the evidence. *Strickland*, 466 U.S. at 694.

As noted above, a reasonable jurist could find the presentence report did not present sufficient evidence to counter-balance Bear Cub's acceptance of responsibility for Red Dog's death.  A reasonable jurist could also find a significant difference in degree between a compound fracture of the nose and the sustained vicious mania that resulted in Red Dog's death.  A reasonable jurist could have decided to follow the parties' joint recommendation to award the two-level reduction for acceptance of responsibility instead of the probation officer's recommendation to deny it.

With the reduction, there is a reasonable probability the sentence ultimately imposed would have fallen within the applicable guideline range.  The sentencing court expressly set aside its own inclinations in order to follow the guidelines calculation.  Emphasizing that Bear Cub benefitted from the calculation, the judge said, "if it were up to me, I would do something different."  Sentencing Tr. at 40:3-13.  The Court made this statement in reference to the Sentencing Commission's enhancement of the second-degree murder guideline for offenses committed after Bear Cub's murder of Red Dog.  *See id*. at 39:13-41:17.  In other words, the sentencing court believed the higher guideline was appropriate but decided to follow the guideline in effect at the time of the offense instead.  The sentencing court also followed the guideline for second-degree murder rather than first-degree murder because second-degree murder was the offense charged and the offense to

which Bear Cub pleaded guilty. *Id*. at 40:14-41:3. Despite the advisory nature of the guidelines and the overarching application of 18 U.S.C. § 3553(a), *see* Sentencing Tr. at 41:4-42:22, and despite the fact the court was "convinced that a higher sentence . . . would be entirely justified," *id.* at 44:19-45:1, the Court imposed a guidelines sentence. Therefore, there is at least a reasonable probability "that the district court would have imposed a different sentence under the correct range," *Molina-Martinez v. United States*, __ U.S. __, No. 14-8913, slip op. at 10 (U.S. Apr. 20, 2016), if it had given Bear Cub credit for accepting responsibility.

There is also at least a reasonable probability that an appeal would have succeeded. The United States' promise was unambiguous. It not only failed to recommend the reduction but actively advocated against it. *See Manzo*, 675 F.3d at 1211 & n.3.

### d. Conclusion as to Procedural Default

As Bear Cub said, counsel represented him in more than one case and "actually did a damn good job" in many respects. Evid. Hr'g Tr. at 18:23-24. As to the United States' breach of the plea agreement, however, counsel was ineffective. Although Bear Cub defaulted his claim of breach, the default should be excused. On both the breach claim and on the derivative claim of ineffective assistance, Bear Cub should prevail.

### III. Conclusion and Remedy

With equitable tolling, Bear Cub timely filed his motion under 28 U.S.C. § 2255. His failure to raise a breach of contract theory at sentencing or on direct appeal is excused because he did not receive the counsel guaranteed by the Sixth Amendment with respect to the breach issue. The United States breached its plea agreement with him in its sentencing memorandum (Doc. 16) and at the sentencing hearing, *see* Sentencing Tr. (Doc. 70).

The judgment should be vacated and Bear Cub should have a new sentencing hearing before a judge who has not reviewed the Findings and Recommendations, the United States' sentencing memorandum, the original sentencing transcript, or the record of these proceedings under 28 U.S.C. § 2255. *See Heredia*, 768 F.3d at 1237; *United States v. Mondragon*, 228 F.3d 978, 981 (2000).

Either party may object to this Findings and Recommendations within 14 days.[10] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Based on the foregoing, the Court enters the following:

## RECOMMENDATIONS

1. Bear Cub's motion under 28 U.S.C. § 2255 (Doc. 56) should be

---

[10] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.

GRANTED in part and DENIED in part. The claim that counsel failed to file a notice of appeal as instructed should be DENIED. The claims that the United States breached the plea agreement and that counsel was ineffective for failing to object should be GRANTED.

2. The Judgment of January 29, 2008 (Doc. 23), should be VACATED.

3. By separate order, the Court should set a new sentencing hearing before a judge who has not reviewed the transcript of the original sentencing hearing or the United States' sentencing memorandum or the record created in these proceedings under 28 U.S.C. § 2255.

DATED this 5th day of April, 2016.


___/s/ John Johnston_____
John Johnston
United States Magistrate Judge