# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JITTAWEE CURLY BEAR CUB,<br><br>Defendant. | **CR-07-117-GF-BMM-JTJ-1**<br><br><br><br>OPINION AND ORDER |

## PROCEDURAL BACKGROUND

This case arises from Defendant/Movant Jittawee Curly Bear Cub's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. 56.) The United States charged Bear Cub as a juvenile with first-degree murder on May 30, 2006. (CR-06-48-GF-SEH, Doc. 1.) Bear Cub pleaded guilty to second-degree murder as an adult under a plea agreement on October 16, 2007. (Doc. 10.) The Court sentenced Bear Cub on January 24, 2008, to a term of 188 months, followed by five years of supervised release. (Doc. 23 at 2-3.)

Bear Cub filed a *pro se* petition with the Court on April 3, 2014. The Court considered the petition under the law governing § 2255 motions. (Docs. 56; 59.) The Court determined that Bear Cub adequately had pled a claim for breach of the

plea agreement and for ineffective assistance of counsel in failing to recognize the breach and in failing to pursue a direct appeal. (Doc. 67 at 2.) The United States filed an answer on November 26, 2014, with a motion to dismiss Bear Cub's claims as untimely and procedurally barred. (Doc. 76.) The United States also disputed Bear Cub's allegation that the United States had breached the plea agreement. *Id.*

United States Magistrate Judge John Johnston held an evidentiary hearing on October 20, 2015. (Doc. 89.) Judge Johnston subsequently issued Findings and Recommendations on May 5, 2016. (Doc. 95.) Judge Johnston recommends that the Court deny Bear Cub's claim that counsel failed to file a notice of appeal as instructed. (Doc. 95 at 41.) Judge Johnston also recommends that the Court grant Bear Club's claim that the United States had breached the plea agreement and that counsel provided ineffective assistance when he failed to object on that basis at sentencing. *Id.* Judge Johnston further recommends that the Court vacate the judgment of January 29, 2008 (Doc. 23), and set a new sentencing hearing for Bear Cub. *Id.*

The United States objected to Judge Johnston's determinations that equitable tolling applies in this case and that the United States had breached the plea agreement. (Doc. 100 at 5.) The Court held a hearing on the United States's objections to the Findings and Recommendations on August 18, 2016. (Doc. 107.)

## STANDARD OF REVIEW

The Court reviews de novo findings and recommendations to which a party objects. 28 U.S.C. § 636(b)(1). No review is required of proposed findings and recommendations to which no party objects. *Thomas v. Arn*, 474 U.S. 140, 149-152 (1986).

## DISCUSSION

Whether Bear Cub's § 2255 motion is time-barred presents the threshold issue. The Court affirms Judge Johnston's finding that equitable tolling applies. Equitable tolling of Bear Cub's motion brings it within the one-year period of limitations. The United States further objects to Judge Johnston's finding that the United States breached its plea agreement with Bear Cub. The United States objects to Judge Johnston's finding that the Government's breach of the plea agreement and his counsel's failure to address the breach caused prejudice to Bear Cub.

### I.     Equitable Tolling of Bear Cub's Motion

The United States maintains that Bear Cub's § 2255 motion should be time-barred as Bear Cub filed more than five years after the expiration of the one-year limitations period. Judge Johnston determined that equitable tolling should apply to Bear Cub's *pro se* petition. Judge Johnston cited the combination of lack of access to his case file, lack of access to legal resources, an order that prohibited Bear Cub

from filing *pro se*, and his counsel's "complete abandonment" of his case. (Doc. 95 at 20-21.) The United States contends "there is no basis in the record for the conclusion that the entire period of over six years is subject to equitable tolling." (Doc. 100 at 12.)

The one-year time limitation for a § 2255 claim runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). The Court entered judgment on January 29, 2008. Bear Cub did not appeal, and, as a result, the judgment became final on February 12, 2008. *Gonzales v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012).

Bear Cub should have filed his § 2255 motion on or before February 12, 2009, in order to comply with the one-year limitation. The limitations period may be tolled on equitable grounds, however, if the defendant can establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quotation omitted).

### a. Diligence

A court should evaluate whether the claimant exercised a "reasonable level of diligence, rather than "maximum feasible diligence." *Id.* at 653 (quotation omitted). The United States argues that Bear Cub failed to exercise reasonable diligence. The United States points out that Bear cub sent a letter to the Court on

July 27, 2009. Bear Cub indicated in his letter that he needed to file a § 2255

motion and likely would receive no further information from his counsel. (Doc.

100 at 15.) Bear Cub did not file his *pro se* petition until April 3, 2014. *Id.*

Judge Johnston detailed Bear Cub's many efforts to obtain his case file

before he filed his petition. (Doc. 95 at 7-20.) The Court's review of the transcript

of the evidentiary hearing held before Judge Johnston on October 20, 2015 (Doc.

92), confirms these efforts.  Most notably, Bear Cub assumed during the first year

of his sentence that his counsel had filed a notice of appeal. (Doc. 95 at 8.) Judge

Johnston found Bear Cub to be "a credible witness on this point." *Id.* Bear Cub

testified that he repeatedly had attempted to contact counsel by phone or letter to

obtain an update and his case file. *Id.* Bear Cub testified that he was "trying to get

ahold of" counsel "[d]uring the whole process," "almost a continuous effort," from

"dang near every facility I've been to." (Doc. 95 at 9, citing Evid. Hr'g Tr. At

38:12-19, 41:10-20, 46:13-47:25, 75:2-8.)

The facts resemble those in *Socha v. Boughton*, 763 F.3d 674 (7th Cir.

2004). The petitioner argued that equitable tolling should apply to his case when

his counsel had failed to turn over his case file, despite numerous requests for the

file. The Court noted that "[e]ven the most seasoned attorneys do not, and should

not, draft motions, memoranda or briefs without access to the basic files

underlying the action." *Id.* at 686. The Court rejected the government's argument

that Socha would not require "all of the time he took" to file his petition wen his habeas petition merely "parroted" claims that he had raised in state court. *Id*. at 688. The Court noted the danger in "conjecture about the amount of time a filing should have taken based on the end result." *Id*. The Court reasoned that Socha could not have known how to best proceed with his case without reviewing his file. *Id*.

Bear Cub likewise should not be faulted for seeking his file before filing a § 2255 motion. Bear Cub seems to have had an idea that he should file a § 2255 motion based on an alleged breach of plea agreement claim well before he actually filed his claim. As in *Socha*, however, Bear Cub could not have known for certain whether his case file presented any potential claims until he reviewed it. Bear Cub exercised reasonable diligence in pursuing his rights.

## b. Extraordinary Circumstances

The Court next must address whether "extraordinary circumstances" stymied Bear Cub. The measure of an "extraordinary circumstance" analyzes "not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008). Bear Cub asserts first that his inability to obtain his case file delayed his filing of the motion. Bear Cub next alleges that he lacked sufficient access to legal resources at the numerous facilities where the Bureau of

Prisons housed him. (Doc. 81 at 8-9; Letter to Court, Doc. 26 at 1-2; Mot. For Counsel, Doc. 64-3 at 2.)

As Judge Johnston noted in his Findings and Recommendations, courts long have recognized a litigant's lack of access to his own legal files and lack of access to legal resources as circumstances that could pose extraordinary obstacles to timely filing. (Doc. 95 at 4.) A litigant who lacks reasonable access to both the facts and the law should not be expected to prepare a timely § 2255 motion.

### 1. Lack of Assistance from Counsel and Lack of Case File

Judge Johnston found that counsel's "complete abandonment of his client" had "literally prevented Bear Cub from filing" before his April 3, 2014 petition. (Doc. 95 at 21.) Bear Cub possessed only one document from his case file—his plea agreement—despite his continued efforts to obtain his case file from his attorney. *Id.* at 11.

The United States argues that "the fact that Bear Cub was ultimately able to proceed with his claims without any further documentation from his counsel necessarily means he could have filed at any time." (Doc. 100 at 15.) The United States argues, therefore, that Bear Cub's lack of assistance from counsel should not be construed as an extraordinary circumstance that prevented him from filing.

A petitioner's ultimate ability to file without counsel's assistance or access to a case file does not necessarily mean that the counsel's failures did not present

extraordinary circumstances that resulted in a delayed filing. The Ninth Circuit has recognized that it would be "unrealistic to expect a habeas petitioner to prepare and file a meaningful petition on his own within the limitations period without access to his legal file." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1028 (9th Cir. 2005) (quotations omitted).

The Ninth Circuit noted in *United States v. Battles*, 362 F.3d 1195 (9th Cir. 2004), that a petitioner's ultimate ability to file a federal petition without access to legal files or attorney assistance should not rule out the conclusion that an attorney's failures caused delay in filing. Battles argued that equitable tolling should apply where his attorney failed to provide him with a copy of his file. *Id.* at 1196. The Ninth Circuit acknowledged that Battles eventually filed his petition without having received his transcripts from his attorney. *Id.* at 1197.

The Court agreed that "at first blush" Battles's eventual filing would make it difficult to show that "extraordinary circumstances beyond his control made it impossible for him to file a petition on time." *Id.* The Court further considered, however, whether the attorney's wrongdoing should amount to extraordinary circumstances. *Id.* at 1197-98. The Ninth Circuit remanded the case to district court to develop an adequate evidentiary record before determining whether to apply equitable tolling.

Judge Johnston already has developed the type of evidentiary record on this issue for Bear Cub that prompted the remand in *Battles*. The record developed by Judge Johnston supports the proposition that Bear Cub's ultimate filing of his petition without his file or his attorney's assistance should not exclude him from the benefit of equitable tolling.

## 2. Lack of Access to Legal Materials

Judge Johnston applied equitable tolling to the periods of time that Bear Cub remained in transit or segregation when he lacked access to legal materials or other forms of help or representation. (Doc. 95 at 7-11.) The United States argues, in part, that Bear Cub's own actions necessitated his being transported to different facilities or his being in segregation during these times. (Doc. 100 at 16-17.) As a result, the United States argues that equitable tolling should not apply.

The Court in *Socha* considered the fact that Socha had spent time in segregation and thus had limited library access at the time that he wished to file the petition. *Socha*, 763 F.3d at 685-86. These facts led Socha to have experienced "extraordinary circumstances" that caused delay. *Id.* Bear Cub's similar lack of access to legal materials due to his time in segregation and transit contributed to the extraordinary circumstances that caused him delay in filing his § 2255 petition.

### 3. Order Prohibiting Bear Cub from Filing *Pro Se* Motions

Judge Johnston concluded that the Court's December 28, 2009, order that blocked any further *pro se* petitions from Bear Cub without permission, combined with failure by Bear Cub's counsel "to take any action at all," impeded Bear Cub from filing a § 2255 motion. (Doc. 95 at 7.) The United States argues that Bear Cub remained unaware of the Court's order until after he had filed his petition in April 2014. The United States alleges that it would be "impossible to conclude that the order dissuaded Bear Cub from filing a § 2255 motion." (Doc. 100 at 22.)

Judge Johnston's findings note that Bear Cub testified that he never received the Court's order. (Doc. 95 at 17.) The Court's order proved unimportant in Judge Johnston's findings regarding whether it directly dissuaded Bear Cub from filing anything with the Court. The Court's order proved important instead because it should have signaled to Bear Cub's counsel that it was "unreasonable . . . to believe that he did not represent Bear Cub." *Id.* at 17 n.3.

Bear Cub's counsel may have had reason to assume that his appointment under the Criminal Justice Act terminated with the conclusion of direct appeal. *Id.* When Bear Cub's counsel received the order, however, he should have known that he remained as Bear Cub's counsel, as expressly stated in the Court's order. This reason, according to the Court's order, prevented Bear Cub from filing motions or claims on his own. *Id.* at 18. The failures of Bear Cub's counsel combined with

Bear Cub's frequent lack of access to legal materials created extraordinary circumstances that contributed to Bear Cub's lengthy delay in filing his § 2255 motion.

### c. Equitable Tolling Calculation

The Ninth Circuit has adopted the "stop clock" approach to analyzing claims for equitable tolling. *Luna v. Kernan*, 784 F.3d 640, 651 (9th Cir. 2015). "[T]he statute-of-limitations clock stops running when extraordinary circumstance first arise." *Id.* The clock resumes running, however, once the "extraordinary circumstance have ended or when the petitioner ceases to exercise reasonable diligence, whichever occurs earlier." *Id.*

Judge Johnston considered two separate relevant time periods: "the 22 months that passed between the expiration of Bear Cub's time of appeal on February 12, 2008, and the issuance of the [December 21, 2009] Order; and the slightly overlapping period of 51 months that passed between Bear Cub's Letter of July 27, 2009, and the filling of Bear Cub's Petition on April 3, 2014." (Doc. 95 at 7.) Judge Johnston determined that 245 days of the limitations period had elapsed by December 28, 2009. Judge Johnston specifically excluded the time periods. *Id.* at 7-11. Consequently, Bear Cub had 120 days to file a petition throughout the period from December 28, 2009, to April 3, 2014. Judge Johnston focused on the

many failures of Bear Cub's counsel to provide assistance in applying equitable tolling to this time period. *Id.* at 11-20.

The United States argues that Bear Cub failed to provide any explanation through testimony "as to how that entire 120-day time period could conceivably be tolled over the next four years and four months until April 2014." (Doc. 100 at 18.) Judge Johnston admittedly did not parse out the 120 days left in the period of limitations and how those applied between December 28, 2009 and April 3, 2014. An exact accounting of those days proves unnecessary, however, during a time period when Bear Cub had been "complete[ly] abandon[ed]" by his counsel. (Doc. 95 at 21.) The entire period could be tolled. The interests of justice in this case require that this time period be tolled either entirely or up to Bear Cub's remaining 120 days.

Extraordinary circumstances prevented Bear Cub from filing his § 2255 motion within the statute of limitations. Bear Cub relied on his counsel to provide him with the information that he needed and to continue to represent him. Bear Cub lacked access to legal materials during his many moves within the Bureau of Prisons. Bear Cub diligently pursued his rights. These facts justify equitable tolling. The Court affirms Judge Johnston's application and calculation of the equitable tolling.

## II. Breach of Plea Agreement

Judge Johnston found that the United States breached its plea agreement with Bear Cub in both its sentencing memorandum (Doc. 16) and during the sentencing hearing (Doc. 70). (Doc. 95 at 40.) The United States objects to this finding. The United States further argues that a procedural bar prevents Bear Cub from pursuing any claim on breach of the plea agreement. (Doc. 100 at 19-20, 22.)

### a. Background

Bear Cub agreed not to contest his transfer from juvenile to adult status under the plea agreement. (Doc. 6 at 10.) The United States agreed, in return, to file a superseding information that charged Bear Cub with second-degree murder rather than the initial first-degree murder charge. *Id.* at 2.

Paragraph 5 of the plea agreement states that "[t]he Defendant acknowledges that the agreement will be fulfilled provided a) the United States moves to dismiss, and the Court agrees to dismiss, the information in CR-06-48-GF-SEH as provided in ¶ 13, and b) makes the recommendations contained in ¶ 11." *Id.* Paragraph 11 provides that "[t]he United States will recommend that the Defendant be given a two point credit for acceptance of responsibility, unless the Defendant is found to have obstructed justice before sentencing. USSG §3C1.1." *Id.* at 7.

The plea agreement further provided that the United States would move the Court at the time of sentencing "to award the Defendant an additional point for

acceptance of responsibility pursuant to §3E1.1(b)." *Id*. at 8. Both parties reserved the right to make appropriate sentencing recommendations. *Id.* at 7.

The Court accepted Bear Cub's guilty plea to the charge of second-degree murder on October 16, 2007. (Doc. 10.) The United States Probation Office prepared a Presentence Investigation Report ("PSR"). (Doc. 95 at 24.) The Probation Office filed an addendum to the PSR on December 11, 2007. The addendum recommended that Bear Cub not receive credit for acceptance of responsibility after it received two disciplinary reports that alleged that Bear Cub had participated in two assaults in detention. *Id.* at 24-25.

The Probation Office omitted the two-point reduction under U.S.S.G. § 3E1.1(a) (eff. Nov. 1, 2003) from the draft PSR. *Id.* at 25. The Probation Office also omitted the one-point reduction under U.S.S.G. § 3E1.1(b). *Id.* The Probation Office stated in the PSR that Bear Cub should not be eligible for the two-point reduction "since he continues with assaultive behaviors." *Id.* Bear Cub objected to Probation's decision to omit the reductions for acceptance of responsibility and timely plea. *Id.* Probation declined to alter the PSR and submitted the issue to the Court for resolution at sentencing. *Id.*

The United States argued in its sentencing memorandum that the Court should deny credit for acceptance of responsibility. *Id.* at 26. The United States argued that Bear Cub's continued demonstration of violent behavior failed to

reflect the conduct of a man who had accepted responsibility for his offense of conviction. (Doc. 16 at 8.) The United States argued that under U.S.S.G. §3E1.1, application note 3, the sentencing court may consider conduct of a defendant that proves inconsistent with his acceptance of responsibility. *Id*. at 7.

The United States failed to mention its agreement to argue in favor of the two-point reduction for Bear Cub's acceptance of responsibility. The United States recommended that the Court impose a sentence higher than the recommended guideline sentencing range. *Id*. The United States requested a sentence of 360 months to life imprisonment. Bear Cub requested a sentence of 135 months of imprisonment. (Doc. 19 at 7.)

Bear Cub's advisory guideline range would have equaled 108 to 135 months with the two-point reduction for acceptance of responsibility. (Doc. 95 at 27.) Bear Cub's guideline sentence would have equaled 151 to 188 months without the two-point reduction for acceptance of responsibility. *Id.*

The United States called three detention officers at the sentencing hearing to testify in support of the Probation Office's recommendation to deny credit to Bear Cub for acceptance of responsibility. *Id.* at 28. The sentencing judge denied credit to Bear Cub for acceptance of responsibility. *Id.* at 29.The Court sentenced Bear Cub to a term of 188 months. *Id.*

### b. Analysis

#### 1. The United States Breached the Plea Agreement

Judge Johnston concluded that the United States had breached the plea agreement when it failed to recommend the two-level downward adjustment. (Doc. 95 at 29-30.) The United States argues Bear Cub's obstruction of justice before sentencing excused it from performance under the plea agreement. (Doc. 100 at 22-23.)

"Plea agreements are contracts, and the government is held to the literal terms of the agreement." *United States v. Johnson*, 187 F.3d 1129, 1134 (9th Cir. 1999). The United States is generally considered to have breached its contractual plea agreement with a defendant if it promises to make a recommendation and then either fails to make that recommendation or makes a different one. *See Id.* at 1135. A court should construe any ambiguities in the defendant's favor when interpreting plea agreements. *United States v. Franco-Lopez,* 312 F.3d 984, 989 (9th Cir. 2002) (quotation omitted).

The United States promised to "recommend that the Defendant be given a two point credit for acceptance of responsibility, unless the Defendant is found to have obstructed justice prior to sentencing." (Doc. 6 at 7.) The United States failed to recommend the reduction based on disciplinary reports from jail where Bear

Cub awaited sentencing. The United States likens Bear Cub's situation to *Puckett v. United States*, 556 U.S. 129 (2009).

After pleading guilty, Puckett not only "assisted another man in a scheme to defraud the Postal Service," but also "confessed that assistance (under questioning) to a probation officer." *Id*. at 132. The government previously had agreed that Puckett had "demonstrated acceptance of responsibility and thereby qualifies for a three-level reduction in his offense level." *Id*. at 131. The government later argued against an acceptance of responsibility reduction based on the defendant's criminal conduct following his guilty plea. *Id.* at 132. The government conceded on appeal that it had breached the plea agreement when it objected to the reduction. *Id.* at 133.

The United States argues that the Court in *Puckett* likely would have reached a different opinion regarding whether a breach had occurred under those circumstances. (Doc. 100 at 30.) Justice Scalia opined in a footnote that "the Government might well have argued that it was excused from its obligation to assert 'demonstrated acceptance of responsibility' because Puckett's ongoing criminal conduct hindered performance. *See* 13 Williston, Contracts § 39.3 (4th ed. 2000). That argument might have convinced us had it been pressed, but the Government conceded the breach, and we analyze the case as it comes to us." *Puckett,* 556 U.S at 140 n.2.

This Court remains unpersuaded that the Supreme Court "might" have been convinced by an argument that further criminal conduct should excuse the United States from its obligation to move for a sentencing reduction for acceptance of responsibility. The plea agreement between Bear Cub and the United States specifically required the United States to recommend the two-point reduction "unless the Defendant is found to have obstructed justice prior to sentencing." (Doc. 6 at 7.)  Under U.S.S.G. § 3C1.1, "obstruction of justice" means, in essence, something that may interfere with investigative or judicial process related to the crime of conviction—not other alleged criminal activities. *See generally* U.S.S.G. § C1.1, Application Notes 1-5.

Further, nothing in the plea agreement indicates that the United States would consider any misbehavior in jail to constitute an "obstruction of justice." The assaults in which Bear Cub allegedly participated while in jail stand unrelated to his case. Any misconduct by Bear Cub fails to rise to the level of obstruction of justice that would have excused the United States from performance under the plea agreement. The Court agrees with Judge Johnston that the United States breached its plea agreement with Bear Cub.

## 2.  Bear Cub's Procedural Default Is Excused

Judge Johnston found that ineffective assistance of counsel prevented Bear Cub from raising his claims on appeal. (Doc. 95 at 34.) Ineffective assistance of

counsel may excuse a procedural default. *United States v. Ratigan*, 351 F.3d 957, 964-65 (9th Cir. 2003) (citing *Murry v. Carrier*, 477 U.S. 478, 488). To determine whether counsel provided ineffective assistance, the Court must consider whether (1) counsel's performance fell below an objective standard of reasonableness, and (2) whether a "reasonable probability" exists that, but for counsel's unprofessional errors, "the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

### i. Ineffective Counsel

To evaluate whether an attorney's work falls below the level of reasonable representation, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 692. Judge Johnston found that Bear Cub's counsel failed to object on grounds of breach when the United States called witnesses to bolster their argument that credit for acceptance of responsibility should be denied. (Doc. 95 at 36). Judge Johnston further found that Bear Cub's counsel failed to preserve the breach issue for appeal. *Id.*

The decision to appeal should have been left to Bear Cub. Judge Johnston noted that no evidence in the record indicated "that counsel specifically discussed with Bear Cub the possibility of appealing on a breach of contract theory." *Id.* at 37. No evidence likewise indicates that Bear Cub's counsel recognized or

researched the possibility. *Id.* The Court agrees with Judge Johnston's conclusion that "counsel did not realize the United States breached the plea agreement, had no reasoned, strategic basis for failing to object to the breach at sentencing, and did not adequately consider or advise Bear Cub about the possibility of an appeal on a breach theory. With respect to the breach, counsel's performance was deficient." (Doc. 95 at 37.)

### ii. Prejudice

To establish prejudice, a defendant must demonstrate only that a reasonable probability exists that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability means a probability sufficient to undermine confidence in the outcome. *Lord v. Wood*, 184 F.3d 1083, 1085 (9th Cir. 1999) (quotations omitted). A reasonable probability represents less than a preponderance of the evidence. *Strickland*, 466 U.S. at 694.

Judge Johnston found that a "reasonable jurist" could have decided to follow the parties' joint recommendation for the two-level reduction for acceptance of responsibility, had it been made, rather than accepting the probation officer's recommendation to deny it. (Doc. 95 at 38.) The sentence imposed may have been for a shorter time period with the reduction. *Id.*

The Court agrees. Applying the two-part *Strickland* test, counsel provided ineffective assistance when he failed to raise the claim related to the breach of the

plea agreement between Bear Cub and the United States. A reasonable probability exists that Bear Cub could have received a shorter sentence. The facts of Bear Cub's incarceration, lack of access to legal materials, and abandonment by his counsel warrants application of equitable tolling that excuses Bear Cub's default.

## CONCLUSION

Application of equitable tolling renders timely Bear Cub's § 2255 motion. The United States breached its plea agreement when it failed to recommend a two-level reduction for Bear Cub's acceptance of responsibility. Bear Cub's counsel provided ineffective assistance when he failed to raise the breach of contract theory at sentencing, or on direct appeal. The Sixth Amendment guarantees effective representation and supports Bear Cub here.

## ORDER

1.     Judge Johnston's Findings and Recommendations are ADOPTED.

2.     Bear Cub's motion under 28 U.S.C. § 2255 is GRANTED in part and DENIED in part. The claim that counsel failed to file a notice of appeal as instructed is DENIED. The claims that the Unites States breached the plea agreement and that counsel was ineffective for failing to object are GRANTED.

3.     The Judgment of January 29, 2008 (Doc. 23) is VACATED.

4.   A new sentencing hearing is scheduled for November 9, 2016 at 1:30 p.m. before the undersigned at the Missouri River Federal Courthouse in Great Falls, Montana.

DATED this 26th day of September, 2016.

Brian Morris
United States District Court Judge